205 P.3d 134 (2009)
Deral GREEN and Vicki M. Green, husband and wife, Respondents and Cross-Appellants.
v.
Susan HOOPER, a married woman dealing in her separate property, the Successors of Loon Lake Park Company, a defunct Washington corporation, and all unknown claimants of any portion of "Beach Walk" an unrecorded Plat of Summer Homes Addition of Morgan Park, David Hooper, and Jeff Hooper, Defendants,
Susan Hooper and David Hooper, husband and wife, Appellants.
No. 25797-5-III.
Court of Appeals of Washington, Division 3.
January 27, 2009.
Publication Ordered April 9, 2009.
*136 David P. Boswell, Ethan Abram King, Boswell Law Firm PS, Spokane, WA, for Appellant/Cross-Respondent.
John Francis Bury, Attorney at Law, Spokane, WA, for Respondent/Cross-Appellant.
KULIK, J.
¶ 1 Deral and Vicki Green brought this action for ejectment, and to quiet title by adverse possession, to a portion of Susan and David Hooper's second class shorelands at Loon Lake in Stevens County. The trial court rejected the Greens' adverse possession claim but granted complete relief to the Greens solely on the basis of the court's equitable discretion to do so.
¶ 2 Shortly thereafter, the court submitted its proposed findings, conclusions, and ruling. The trial court granted the Greens' *137 claim based on mutual recognition and acquiescence, a claim not pleaded, but included under CR 15(b) by the court. The court concluded that the doctrine of mutual recognition and acquiescence supplements the doctrine of adverse possession and was supported by the evidence.
¶ 3 On appeal, the Hoopers argue eight separate issues which can be summarized into three contentions. The Hoopers contend that the trial court erred by: (1) basing its judgment on the Greens' untimely and unpleaded claim of mutual recognition and acquiescence when that claim was excluded at trial as prejudicial; (2) granting a judgment quieting title to the disputed land in the Greens when there was insufficient evidence to sustain the Greens' burden of proof on a claim for mutual recognition and acquiescence; and (3) denying the Hoopers' request for a jury trial.
¶ 4 We hold that a claim of mutual recognition and acquiescence is a separate claim from adverse possession. And even if the Greens had properly pleaded mutual recognition and acquiescence, they did not prove this claim by the requisite clear, cogent, and convincing evidence. Accordingly, we reverse the trial court and quiet title in the Hoopers to the disputed land. We also hold that the trial court properly denied a jury trial.

FACTS
¶ 5 The parties own adjoining upland properties at Loon Lake, lots 30 and 31, together with the second class shorelands abutting these lots. On January 16, 2004, Deral and Vicki Green (the "Greens") filed suit in Stevens County seeking to quiet title to a specific portion of Susan and David Hooper's (the "Hoopers") second class shorelands on the theory of adverse possession, and to eject the Hoopers from that portion of their property. The original complaint for quiet title and ejectment contained neither a claim for mutual recognition and acquiescence, nor a request for discretionary or equitable adjustment of the parties' shorelands boundaries. The court denied the Hoopers' jury demand.
¶ 6 For roughly the next two and one-half years, the case proceeded on an adverse possession theory.
¶ 7 On May 31, June 2, and June 7, 2006, the court held a trial on the Greens' amended complaint for quiet title, ejectment, and trespass to land and the Hoopers' counterclaim for quiet title. The Greens presented their entire case-in-chief before the close of the second day of trial. At that point, three witnesses were called by the Greens and numerous exhibits were admitted into evidence. At approximately noon on the second day of trial, the Greens rested. During the remainder of the second day of trial, the Hoopers began presentation of their defense as to the Greens' adverse possession and ejectment claims.
¶ 8 On the third and last day of trial, the Greens filed and served in court a supplemental trial brief seeking relief under an alternative cause of action, mutual recognition and acquiescence. The Hoopers' counsel immediately objected to the advancement of a new theory so late in the trial. The Greens did not move to amend their pleadings. Throughout the last day of trial, the Hoopers continued to object to any evidence on the Greens' new theory of the case. Ultimately, the court disallowed, as prejudicial, the Greens' claim under mutual recognition and acquiescence.[1]
¶ 9 The Hoopers' expert witness, Lawrence Benson, a professional land surveyor, prepared a survey of the Hoopers' second class shorelands prior to litigation. In accordance with the so-called "Massachusetts Rule," the common shorelands boundary between the parties was established at a 90-degree angle to the line of vegetation. Mr. Benson's survey showed there were no physical *138 encroachments or improvements on the parties' common shorelands boundary. The Greens' expert surveyor, James Benthin, agreed. There was no evidence of any open, continuous, notorious or hostile possession of the specific disputed strip for the 10-year statutory period to support the Greens' claim of adverse possession. The trial court made specific findings of fact and conclusions of law on those points and held that the evidence did not sustain proof of the elements of the pleaded cause of action.
¶ 10 Despite rejecting the Greens' claim of adverse possession, the trial court set the specific boundary between the parties' second class shorelands as a straight line projection of the parties' common upland boundary. In its oral ruling, the trial court relied exclusively on its equitable discretion.
¶ 11 On June 27, 2006, the trial court entered a notice of presentment along with its proposed findings of fact, conclusions of law, and ruling. The trial court changed its previous ruling which excluded the Greens' claim of mutual recognition and acquiescence and entered findings of fact and conclusions of law based on that theory. Specifically, the court found that:
The common boundary between Lots 30 and Lot 31 is and has been well defined by the railroad tie retaining wall and by the obvious midpoint between the common boundaries of Lots 31 and 32, and 29 and 30. The adjoining landowners, the Greens and Hoopers and the predecessors in interest, have in good faith for decades, manifested by their acts, occupancy and improvement locations, a mutual recognition and acceptance of the projected line as the true boundary line.
Clerk's Papers (CP) at 233. In a footnote, the court noted that "[a]t the conclusion of the trial the Court did not allow plaintiffs to argue mutual acquiescence as that theory surfaced only late in trial. The Court on its own motion concludes that theory `supplements adverse possession' and is supported by the evidence." CP at 233. Also in the footnote, the Hoopers were "asked to request reconsideration to present their counter argument." CP at 233.
¶ 12 The Hoopers filed their written objections. At the presentment hearing, counsel for the Hoopers asked the trial court whether the doctrine of mutual recognition and acquiescence was implicitly argued or included within a claim for adverse possession. In response, the trial court analogized a mutual acquiescence claim to a "lesser included offense in a criminal proceeding." RP (July 25, 2006) at 7. The trial court concluded that the theory "is in effect a lesser included or companion theory that is always available in such a case." RP (July 25, 2006) at 33. Title to the disputed shorelands area was quieted in the Greens.
¶ 13 The court denied reconsideration as to the previously excluded and unpleaded claim of mutual recognition and acquiescence. The doctrine, in the court's view, was still a "supplement" to a claim of adverse possession, such that a pleaded claim for adverse possession necessarily included a claim of mutual recognition and acquiescence, sufficient to give fair notice to a defendant. CP at 361-62. The trial court further concluded that the elements of mutual recognition and acquiescence had been proven by the evidence introduced at trial.
¶ 14 The ruling indicates that the trial court made its own CR 15(b) "amendment to conform to the evidence, namely the evidence of permissive use, or acquiescence, in the common boundary." CP at 362. The trial court determined that the Hoopers were not surprised or prejudiced by the court's amendment, as the evidence about adverse possession introduced at trial showed the history of the common boundary and whether the use had been adverse or by acquiescence. The trial court also noted that "any surprise was cured by the motion for reconsideration." Id. In conclusion, the trial court stated that the CR 15(b) "amendment avoided a multiplicity of suits." Id.
¶ 15 The Hoopers timely filed their notice of appeal. Then, on February 6, 2007, the trial court held a hearing on the Greens' motions to award attorney fees, enter a cost bill, and to increase the amount of the supersedeas bond. The Greens sought an award of attorney fees under RCW 4.84.260 as prevailing parties with a recovery greater than *139 previously offered to the Hoopers in settlement. The trial court awarded the Greens $4,314.78 in costs, but did not award them attorney fees under the statute. The Greens cross-appeal from that award.

ANALYSIS

I. CR 15(b)

¶ 16 The Hoopers first contend that the trial court erred by basing its judgment on the Greens' untimely and unpleaded claim of mutual recognition and acquiescence when that claim was previously excluded at trial as prejudicial. Specifically, the Hoopers argue that in amending the complaint under CR 15(b) to include the Greens' claim of mutual recognition, the trial court erred by: (1) concluding, as a matter of law, that an unpleaded claim of mutual recognition and acquiescence "supplements" a pleaded claim of adverse possession in the sense that it is contained within it; (2) basing its judgment on excluded evidence; (3) violating the Hoopers' constitutional due process and fair trial rights; and (4) concluding that the prejudice to the Hoopers at trial of allowing retroactive amendment to include the Greens' unpleaded claim under CR 15(b) was cured by a subsequent motion for reconsideration.
¶ 17 We will reverse a trial court's CR 15 ruling only on a showing of manifest abuse of discretion. Herron v. Tribune Pub'g Co., Inc., 108 Wash.2d 162, 165, 736 P.2d 249 (1987). A trial court abuses its discretion if its decision is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. In re Marriage of Kovacs, 121 Wash.2d 795, 801, 854 P.2d 629 (1993). A decision is based on untenable reasons "if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." In re Marriage of Littlefield, 133 Wash.2d 39, 47, 940 P.2d 1362 (1997) (citing State v. Rundquist, 79 Wash. App. 786, 793, 905 P.2d 922 (1995)).
¶ 18 Under CR 15(b), a trial court on its own motion may amend pleadings to conform to the evidence and issues actually litigated before the court in order to avoid the necessity of a new trial and a multiplying of lawsuits. Harding v. Will, 81 Wash.2d 132, 136, 500 P.2d 91 (1972).
¶ 19 At the discretion of the trial court, the pleadings may be amended to conform to the evidence at any stage in the action, including at the conclusion of a trial, and even after judgment. MacCormack v. Robins Constr., 11 Wash.App. 80, 83, 521 P.2d 761 (1974). The rule states that while a party may move to conform the pleadings to the evidence at any time, "failure so to amend does not affect the result of the trial of these issues." CR 15(b).
¶ 20 A trial court may amend the pleadings to include an unpleaded claim, as was done here. "However, amendment under CR 15(b) cannot be allowed if actual notice of the unpleaded issue is not given, if there is no adequate opportunity to cure surprise that might result from the change in the pleadings, or if the issues have not in fact been litigated with the consent of the parties." Harding, 81 Wash.2d at 137, 500 P.2d 91. CR 15(b) provides as follows:
If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.

(Emphasis added.)
¶ 21 The Hoopers immediately objected when the Greens first suggested that they were advancing a new theory, and the Hoopers continued to object to any evidence being introduced for purposes of proving that claim throughout trial. Accordingly, mutual recognition and acquiescence was not tried by express or implied consent. Because CR 15(b) provides authority for amending a complaint to add a new cause of action as a basis for recovery even when one party objects, the question here is whether the court manifestly abused its discretion in doing so.
¶ 22 The Hoopers contend the trial court erred by concluding that any surprise *140 or prejudice to the Hoopers caused by allowing the new cause of action was "cured" by the motion for reconsideration. CP at 362. The Hoopers argue that the trial court's reinstatement of the mutual recognition and acquiescence claim after trial "reinstated the prejudice to the Hoopers  a claim for which they had no notice at all, no opportunity to conduct discovery, no opportunity to cross-examine plaintiffs' witnesses, no opportunity to prepare or brief and which caused prejudicial delay for them." Br. of Appellant at 26.
¶ 23 Relying on this court's decision in Hubbard v. Scroggin, 68 Wash.App. 883, 889-90, 846 P.2d 580 (1993), the Hoopers argue that the court abused its discretion by reinserting a surprise claim and evidence which it had previously excluded, and then proceeding to judgment. Id. In Hubbard, the court emphasized that "amending a pleading under CR 15(b) to conform with the evidence must meet certain requirements of consent, notice, and no prejudice." Id. at 889, 846 P.2d 580. Likewise, the court in MacCormack stated: "The rule permits a court on its own motion to amend pleadings to reflect issues tried with the implied or express consent of the parties so long as any objecting party is allowed sufficient time to prepare his case on the new issues." MacCormack, 11 Wash.App. at 83, 521 P.2d 761 (emphasis added).
¶ 24 A CR 15(b) amendment may not unfairly prejudice a party's ability to present a defense. Hubbard, 68 Wash.App. at 889, 846 P.2d 580. In this case, the motion for reconsideration was insufficient to provide the Hoopers a fair opportunity to rebut the reinstated mutual recognition and acquiescence claim. The Hoopers argue that when the trial court concluded that the CR 59 motion for reconsideration cured the prejudice that occurred at trial, it was essentially concluding that the motion was a separate trial on a claim for mutual recognition and acquiescence. The Hoopers aptly point out that a CR 59 motion provides a method to seek a new trial; it cannot itself be a new trial. The Hoopers' arguments are persuasive.
¶ 25 The Hoopers were given notice that mutual recognition and acquiescence was the basis for judgment against them for the first time after the close of trial and after having been led to believe at trial that the claim had been excluded. The court then invited the Hoopers to file a motion for reconsideration. In effect, the court invited the Hoopers to disprove the Greens' excluded claim of mutual recognition and acquiescence. However, the Hoopers had no notice that the reconsideration motion invited by the court was anything more than an opportunity to challenge the legal conclusion that mutual recognition and acquiescence supplements adverse possession. Because the Hoopers could not conduct additional discovery or cross-examine the Greens' witnesses, and a motion for reconsideration is not the appropriate method to present additional evidence, the motion for reconsideration did not provide the Hoopers a "fair opportunity to rebut the reinstated claim." Hubbard, 68 Wash.App. at 890, 846 P.2d 580.
¶ 26 The trial court erred by concluding that any surprise or prejudice to the Hoopers caused by the additional claim was cured by the motion for reconsideration.
¶ 27 The Hoopers also contend that the trial court erred as a matter of law by determining that mutual recognition and acquiescence is a "supplement" or "companion theory" of an adverse possession claim which is "always available," whether pleaded or not. RP (July 25, 2006) at 33. We agree.
¶ 28 William Stoebuck, a well-recognized authority on Washington real property law, explains in his treatise that there are "four legal doctrines that, in addition to adverse possession, may allow boundaries to be adjusted by oral acts of neighbors or by their acts on the ground, contrary to the boundaries described in title documents." 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 8.21, at 544 (2nd ed.2004). These four boundary adjustment doctrines include: (1) common grantor, (2) estoppel in pais, (3) parol agreement, and (4) recognition and acquiescence. Id. In his treatise, Mr. Stoebuck uses the word "supplements" with reference to the doctrines of mutual recognition and acquiescence and adverse possession. Id. at 545. At one point, *141 he states: "It is useful to think of these doctrines as supplementing adverse possession in the settlement of boundaries." Id. at 545.
¶ 29 Division Two of this court has relied on the above cited section of Mr. Stoebuck's treatise on the subjects of adverse possession and mutual recognition and acquiescence and incorporated the word "supplements" into its holdings. Lloyd v. Montecucco, 83 Wash. App. 846, 855, 924 P.2d 927 (1996) (citing STOEBUCK, § 8.21 at 519); Lilly v. Lynch, 88 Wash.App. 306, 316, 945 P.2d 727 (1997).
¶ 30 In fact, the court in Lilly correctly referred to the two doctrines as "alternative theories," and to mutual recognition and acquiescence specifically as an "alternate claim" to adverse possession. Lilly, 88 Wash.App. at 308, 316, 945 P.2d 727. The context and use of the word "supplements" in these cases is consistent with Mr. Stoebuck's meaning of that word in his treatise  that mutual recognition and acquiescence and adverse possession are separate and independent theories and claims.
¶ 31 Although the trial court in its final ruling acknowledged the separateness and independence of the doctrines, it nonetheless based its judgment on the one "supplementing" the other. This was error. The doctrine of mutual recognition and acquiescence does not "supplement" adverse possession in the sense that it is contained within a pleaded cause of adverse possession and it is not sufficient, without expressly being pleaded, to give fair notice to a defending litigant where judgment is being sought solely on the theory of adverse possession.

II. Mutual Recognition and Acquiescence

¶ 32 The Hoopers next contend that the trial court erred by concluding that the Greens' claim for mutual recognition and acquiescence was supported by the evidence. We decide this issue in the interest of judicial economy.
¶ 33 The Hoopers argue that the trial court's conclusion of law that the common boundary line between their lot and the Greens' lot is, and has been, defined by the railroad tie retaining wall is not supported by the findings of fact. The Hoopers contend that the essential elements of a claim of mutual recognition and acquiescence cannot be established, as there are no monuments, roadways, or fence lines along the boundary claimed by Greens, except for a short retaining wall built by Susan Hooper's father, Mr. Barclay, which extends from the edge of the Hoopers' upland lot into their shoreline property.
¶ 34 In addition, the Hoopers contend that the trial court impermissibly justified its conclusions granting the Greens' claim under mutual recognition and acquiescence by considering boundary lines other than the one in dispute, mainly the boundary lines between lots 29 and 30 and between lots 31 and 32. Further, the Hoopers maintain that there was no testimony by either party at trial as to any mutuality of recognition in the shorelands boundaries between lots 30 and 31, and no evidence to support the trial court's conclusion that a common boundary line had been mutually recognized for the 10-year period. In sum, the Hoopers' claim that the trial court's findings of fact are not supported by substantial evidence and the findings do not support the conclusions of law, resulting in reversible error. We agree.
¶ 35 "When a court enters findings of fact and conclusions of law following a bench trial, our review is limited to determining whether substantial evidence supports the findings and, if so, whether they support the trial court's conclusions of law and judgment." Saviano v. Westport Amusements, Inc., 144 Wash.App. 72, 78, 180 P.3d 874 (2008). Evidence is substantial if it is sufficient to persuade a fair-minded person that the declared premise is true. Am. Nursery Prods., Inc. v. Indian Wells Orchards, 115 Wash.2d 217, 222, 797 P.2d 477 (1990). Conclusions of law are reviewed de novo. Rasmussen v. Bendotti, 107 Wash.App. 947, 954, 29 P.3d 56 (2001).
¶ 36 A plaintiff claiming ownership under the doctrine of mutual recognition and acquiescence must prove each of the following elements by clear, cogent, and convincing evidence:

*142 (1) The line must be certain, well defined, and in some fashion physically designated upon the ground, e.g., by monuments, roadways, fence lines, etc.; (2) in the absence of an express agreement establishing the designated line as the boundary line, the adjoining landowners, or their predecessors in interest, must have in good faith manifested, by their acts, occupancy, and improvements with respect to their respective properties, a mutual recognition and acceptance of the designated line as the true boundary line; and (3) the requisite mutual recognition and acquiescence in the line must have continued for that period of time required to secure property by adverse possession.
Lamm v. McTighe, 72 Wash.2d 587, 593, 434 P.2d 565 (1967).
¶ 37 "In the absence of an agreement to the effect that a fence between the properties shall be taken as a true boundary line, mere acquiescence in its existence is not sufficient to establish a claim of title to a disputed strip of ground." Id. at 592, 434 P.2d 565 (quoting Thomas v. Harlan, 27 Wash.2d 512, 518, 178 P.2d 965 (1947)). Rather, an acquiescence must consist in recognition of the fence as a true boundary line, and not mere acquiescence in the existence of a fence as a barrier. Id.
¶ 38 Here, the trial court entered conclusions of law, stating that the "common boundary between Lots 30 and Lot 31 is and has been well defined by the railroad tie retaining wall and by the obvious midpoint between the common boundaries on Lots 31 and 32, and 29 and 30." CP at 253. The court also concluded that "[t]he adjoining landowners, the Greens and Hoopers and the predecessors in interest, have in good faith for decades, manifested by their acts, occupancy and improvement locations, a mutual recognition and acceptance of the projected line as the true boundary line." CP at 253 (emphasis added). The projected boundary line between the parties' common shorelands properties appears as a straight projection or extension of the parties' common upland boundary.
¶ 39 (1) Well-Defined Line. The survey of the parties' common second class shorelands boundary, prepared by Lawrence Benson in 2003 and admitted at trial as defendants' exhibit 202, disproves the claim that any certain, well-defined boundary line existed along the beach. In order to establish the first element of mutual acquiescence, the purported boundary line "must be certain, well defined, and in some fashion physically designated upon the ground." Lamm, 72 Wash.2d at 593, 434 P.2d 565. As shown by the survey, there are no monuments, roadways, or fence lines along the shorelands boundary claimed by the Greens, except for the railroad tie retaining wall extending into the beach area just south of the Hoopers' upland lot, and situated entirely within the Hoopers' property. Consistent with the survey, both parties' expert witnesses, surveyors James Benthin and Lawrence Benson, testified at trial that there were no physical designations, improvements, or encroachments along the surveyed boundary line between the Hoopers' and the Greens' second class shorelands.
¶ 40 In addition, the evidence that there are no physical designations along the parties' common shorelands boundaries is further corroborated by the photographs introduced at trial by both parties. Most significantly, the trial court entered the following finding of fact: "There have never been improvements in the disputed area between Lots 30 and 31." CP at 248.
¶ 41 (2) Mutual Recognition and Acceptance. The Greens failed to establish the second element by clear, cogent, and convincing evidence. The testimony at trial was insufficient to show that, absent an express agreement, the Greens and the Hoopers, or their predecessors in interest, "in good faith manifested, by their acts, occupancy, and improvements with respect to their respective properties, a mutual recognition and acceptance of the designated line as the true boundary line." Lamm, 72 Wash.2d at 593, 434 P.2d 565. Specifically, Mr. Barclay, who lived year-round on lot 30 for over 35 years prior to conveying it to his daughter, Ms. Hooper, never testified that there was any mutual recognition in the "projected" shorelands boundary line between his property *143 and lot 31 that was ultimately established by the court as the true boundary line.
¶ 42 In finding mutual recognition, the trial court focused heavily on the retaining wall situated on the Hoopers' property which extends lakeward. The court found that the "common boundary was not fenced, but more than ten (10) years ago, Mr. Barclay did build a railroad tie retaining wall along a part of the common boundary." CP at 246. Significantly, however, the retaining wall is located immediately south of the Hoopers' upland lot and extends only a short distance into the shorelands area. According to Mr. Barclay's deposition, he intended to construct the retaining wall entirely within the boundaries of his own property. In fact, the retaining wall is situated within the Hoopers' property under either of the boundary lines advanced by the parties.
¶ 43 There is no evidence to show that the retaining wall was "recognized by the parties as a true boundary and not just a barrier." Lilly v. Lynch, 88 Wash.App. 306, 316-17, 945 P.2d 727 (1997). Moreover, there is no evidence to indicate that the parties intended to recognize a boundary line projecting from the retaining wall across the shorelands to the water. Accordingly, the evidence before the trial court did not support the court's conclusion that "a mutual recognition and acceptance of the projected line as the true boundary line." CP at 253 (emphasis added).
¶ 44 (3) Mutual Acquiescence. Finally the Greens failed to sustain their burden of proving that "both parties acquiesced in the line for the period required to establish adverse possession-10 years." Lilly, 88 Wash.App. at 317, 945 P.2d 727 (emphasis added). The only owner of lot 31 to testify at trial was Mr. Green, who purchased the property with his wife only four years earlier. As a result, there was insufficient evidence to support any conclusion that a common boundary had been mutually recognized by the parties and their predecessors for the requisite 10-year period.
¶ 45 In conclusion, the Greens failed to sustain their burden of proving each essential element of their claim for mutual recognition and acquiescence. The evidence before the trial court did not rise to the level of clear, cogent, and convincing evidence that a certain, well-defined boundary line existed along the beach which formed the parties' common shorelands boundary. Moreover, there was insufficient evidence that the Greens and the Hoopers, or their predecessors, mutually recognized any such boundary and had done so for more than 10 years.
¶ 46 The trial court erred by granting the Greens' claim based on mutual recognition and acquiescence, and quieting title to a portion of the Hoopers' shorelands property in the Greens.

III. Request for a Jury Trial

¶ 47 The Hoopers also claim that the trial court erred by denying their jury demand. The Hoopers point out that the Greens' complaint sought to eject the Hoopers from a specific portion of their beachwalk property and to obtain title to that land. Noting that this was a pleaded cause of action for ejectment, the Hoopers correctly state that the Washington Constitution guarantees the right to a jury trial in common law actions for ejectment, but not in equitable actions to quiet title. Durrah v. Wright, 115 Wash.App. 634, 644, 63 P.3d 184 (2003); CONST. art. I, § 21. Additionally, the Hoopers argue that the right to a jury trial in this case has been expanded by statute, RCW 4.40.060. Accordingly, the Hoopers argue that they were denied their constitutional and statutory right to impanel a jury.
¶ 48 Article I, section 21 of the Washington Constitution provides that "[t]he right of trial by jury shall remain inviolate." This constitutional provision has been consistently interpreted as "guaranteeing those rights to trial by jury which existed at the time of the adoption of the constitution." Brown v. Safeway Stores, Inc., 94 Wash.2d 359, 365, 617 P.2d 704 (1980); In re Marriage of Firchau, 88 Wash.2d 109, 114, 558 P.2d 194 (1977). "There is a right to a jury trial where the civil action is purely legal in nature." Brown, 94 Wash.2d at 365, 617 P.2d 704. However, there is no right to a trial by jury where the action is purely equitable in nature. Id. "The overall nature of the action is determined by considering all *144 the issues raised by all the pleadings." S.P.C.S., Inc. v. Lockheed Shipbuilding & Constr. Co., 29 Wash.App. 930, 933, 631 P.2d 999 (1981). "In determining whether a case is primarily equitable in nature or is an action at law, the trial court is accorded wide discretion, the exercise of which will not be disturbed except for clear abuse." Brown, 94 Wash.2d at 368, 617 P.2d 704.
¶ 49 The court in Durrah held that the Washington Constitution "guarantees the right to a jury trial in common law actions for ejectment, but not in equitable actions to quiet title." Durrah, 115 Wash. App. at 644, 63 P.3d 184. If a party who claims to have acquired title by adverse possession is in possession of the disputed land, he or she can sue only to quiet title; if he or she is not in possession, he or she can sue both to eject and quiet title. Id. at 648-49, 63 P.3d 184. Significantly, where a party sues both to eject and to quiet title, the action will be mixed, and it may or may not be triable with a jury. Id. at 649, 63 P.3d 184. In cases involving both legal and equitable issues, it is within the trial court's broad discretion "to allow a jury on some, none, or all issues presented." Brown, 94 Wash.2d at 367, 617 P.2d 704.
¶ 50 Using the historical approach which focuses on the distinction between law and equity, the Hoopers were not guaranteed the right to a jury trial. The current action is neither purely legal nor equitable in nature. The pleadings establish that this was both an action to quiet title and an action for ejectment. An action to quiet title is equitable in nature, regardless of the fact that the Greens sought to quiet title first under a theory of adverse possession, and later under a theory of mutual recognition and acquiescence. See Durrah, 115 Wash.App. at 639, 63 P.3d 184. Accordingly, the primary relief sought by the Greens is almost exclusively equitable in nature. However, this court must also consider whether the right to a jury trial has been expanded by statute, and whether it applies in this case.
¶ 51 Under RCW 4.40.060, an "issue of fact, in an action for the recovery of money only, or of specific real or personal property shall be tried by a jury." In addressing this statute, one authority states:
RCWA 4.40.050 requires issues of law to be tried by the court, unless the matter is referred to a referee. Issues of law are always decided by the court, regardless of whether the case involves legal or equitable claims or defenses. RCWA 4.40.060 requires a trial by jury on issues of fact in actions to recover only money or in actions to recover specific personal or real property, unless a jury is waived or the matter is referred to a referee. The statute does not, however, require trial by jury in an equity case even if part of the relief will be a money judgment.

1 KELLY KUNSCH, WASHINGTON PRACTICE: METHODS OF PRACTICE § 4.3, at 63-64 (4th ed.1997) (emphasis added). Another section of that authority states that "[t]he courts, in analyzing the basic right to a jury trial, have generally ignored these statutes." 14 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 10.12, cmt. 3 at 290 (1st ed.2003). Although the Hoopers urge this court to find that the right to a jury trial in this case has been expanded by statute, we disagree. This action cannot be said to be an action for the "recovery" of specific property, either real or personal. The Greens sought to quiet title to a portion of the Hoopers' second class shorelands between their adjoining lots. Therefore, even though the action to quiet title necessarily involves specific real property, the action is primarily equitable in nature. See S.P.C.S., 29 Wash.App. at 934, 631 P.2d 999 ("[E]ven if the action is one for money damages, it may be primarily equitable in nature.").
¶ 52 This action presents a mixture of legal and equitable issues. Therefore, there is neither constitutional nor statutory authority to a trial by jury. We conclude the trial court did not abuse its discretion by denying the Hoopers' motion for a jury trial.
¶ 53 Given our resolution, we need not address the Greens' claim for attorney fees.
¶ 54 In summary, we reverse the order granting the Greens' adverse possession by mutual recognition and acquiescence and *145 grant the Hoopers' quiet title claim. We affirm the trial court's denial of a jury trial.
WE CONCUR: SCHULTHEIS, C.J., and SWEENEY, J.
NOTES
[1] The trial court ruled as follows:

But that does leave, then, the question of acquiescence in an understood boundary. And Mr. Bury presses this argument on the court, and I think there's some merit to it. The problem I have at the same time is that now it's brought before the court, basically on the last day of trial, and Mr. Boswell argues that that works an unfairness on him, that he had not been prepared to defend that. And I'll accept his argument on that point and not allow that.
Report of Proceedings (RP) (June 7, 2006) at 689 (emphasis added).