IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JOHN KINDT and ONAME BURLINGAME, husband and wife<br><br>               Appellants,<br><br>          v.<br><br>GREG CUNNINGHAM and ELIZABETH STOHR, husband and wife, and the marital community thereof,<br><br>             Respondents. | No. 87169-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — Neighboring couples John Kindt and Oname Burlingame (together, "Kindt") and Greg Cunningham and Elizabeth Stohr (together "Cunningham") sued each other over a parking space between their properties. Kindt brought a complaint against Cunningham, who counterclaimed, and eventually a jury returned special verdicts in Cunningham's favor, agreeing with each of the several theories they asserted. Kindt now claims that substantial evidence does not support the jury's verdicts and that Cunningham wrongly failed to present a legal description of the disputed land to the jury, appealed to racial bias during the trial, and is not entitled to the attorney fees the court awarded. While we conclude substantial evidence does not support the jury's finding on adverse possession, we conclude there is substantial evidence to support setting

the boundary in Cunningham's favor under the doctrine of mutual acquiescence. In turn, we reverse the attorney fees award, which was based on adverse possession, and we decline to award fees on appeal. We otherwise affirm.

## I. BACKGROUND

At the time in question, Kindt and Cunningham lived next door to one another. Kindt's home (with an address of "2619") is located just to the east of Cunningham's ("1009"). The land at issue in this matter, as seen in the image below, sits on a concrete pad built in 1977 by Susan Sterman, who owned the home Kindt now lives in.[1]



Kindt's immediate predecessors, Maureen Kearney and Jay Kreissl (Kearney), bought 2619 from Susan in 1979. Kindt then bought the home from Kearney in 2018. Cunningham's immediate predecessor, Joanne Voiland, bought 1009 in 1965, and lived there until 2006. It sat vacant for several years, and Cunningham bought the home from Voiland in 2011.

---

[1] Susan's last name is spelled in different ways throughout the record and by the parties, including as Sterman, Stuurman, Stuurmans, and Sturrmans. We will refer to her simply as "Susan."

In the first few years that Kindt and Cunningham were neighbors, they parked on the side of the concrete pad adjacent to their respective homes, as prior occupants had done, without dispute. However, after Cunningham installed an electric charger for a larger minivan and began parking that vehicle on the pad, the dispute underlying this case arose and the parties' relationship devolved.

In December of 2020, Kindt asked Cunningham to no longer park on the pad, and the parties met informally but could not reach an agreement on who was entitled to park where. Kindt subsequently requested Cunningham remove all their possessions from the pad and, in response, Cunningham claimed they owned its western side. Acrimony between the parties grew, and Kindt installed surveillance cameras which faced Cunningham's property, called SPD parking enforcement, and reported Cunningham twice to adult services, alleging they had abused one of their own parents. According to Kindt, some of Cunningham's friends in the neighborhood engaged in behavior intended to intimidate Kindt.

In April 2021, Kindt sued Cunningham, bringing claims of quiet title, trespass, and nuisance, and seeking ejectment as well as injunctive and declaratory relief. In their answer, Cunningham brought a counterclaim to quiet title under theories of adverse possession, prescriptive easement, mutual recognition and acquiescence, and estoppel in pais. The parties tried this case before a jury in August 2022, and Cunningham prevailed on each of their theories, while Kindt lost on each of theirs.

Subsequently, after some administrative delay, Cunningham successfully moved the court to enter judgment in January 2024. The next month, the court

3

awarded Cunningham $117,293.86 in attorney fees. Kindt then petitioned our Supreme Court for direct review, which it declined, thereby transferring this appeal to this court.

## II. ANALYSIS

### A. Substantial Evidence to Support the Judgment

We will not disturb a jury verdict unless it is "clearly unsupported by substantial evidence." *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 107-08, 864 P.2d 937 (1994). Our Supreme Court there held that we should not

> willingly assume that the jury did not fairly and objectively consider the evidence and the contentions of the parties relative to the issues before it. The inferences to be drawn from the evidence are for the jury and not for this court. The credibility of witnesses and the weight to be given to the evidence are matters within the province of the jury and even if convinced that a wrong verdict has been rendered, the reviewing court will not substitute its judgment for that of the jury, so long as there was evidence which, if believed, would support the verdict rendered.

*Id.* (quoting *State v. O'Connell*, 83 Wn.2d 797, 839, 523 P.2d 872 (1974)). "Substantial evidence is said to exist if it is sufficient to persuade a fair-minded, rational person of the truth of the declared premise." *Johnson v. Wash. State Liquor & Cannabis Bd.,* 197 Wn.2d 605, 611, 486 P.3d 125 (2021).

#### 1. Adverse Possession

To prove adverse possession, a claimant must provide evidence to show 10 years of possession that was (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile. *Miller v. Anderson*, 91 Wn. App. 822, 827, 964 P.2d 365 (1998).

Kindt argues Cunningham did not put forth evidence that their historic

4

possession of the disputed property was anything but permissive, meaning that the jury did not hear evidence to support a showing of hostility, which is fatal to their claim of adverse possession. We agree.

Hostility does not require personal animosity or adversarial intent, but rather, a showing of use that was hostile to the true owner's title. *Id.* at 828. Importantly, "[u]se with the true owner's permission . . . cannot be use hostile to the true owner's title." *Id.* In turn, "permission to occupy . . . land, given by the true title owner to the claimant or his predecessors in interest, will . . . operate to negate the element of hostility." *Chaplin v. Sanders*, 100 Wn.2d 853, 861-62, 676 P.2d 431 (1984).

Permission need not be expressly granted to negate the required element of hostility; permission may be implied. *Miller*, 91 Wn. App. at 828. An inference of permissive use arises when it is reasonable to assume "that the use was permitted by sufferance and acquiescence." *Id.* (quoting *Granston v. Callahan*, 52 Wn. App. 288, 294, 759 P.2d 462 (1988)). This court has held that permission often is granted as a "neighborly accommodation" and held that "permission once granted is presumed to continue." *Id.* at 831. To prove that a previously granted permission was later terminated, the party claiming adverse possession bears the burden of showing inter alia an "obvious change in use" asserting a hostile right to the true ownership. *Id.* at 829, 832.[2]

---

[2] Cunningham argues "there is a split of authority regarding whether a presumption of permission applies in adverse possession cases" and that any such presumption should not apply here. We need not reach whether any split in authority exists, let alone try to resolve it, even assuming there is one.

Here, we hold there is not substantial evidence to support a finding of hostile possession for 10 years, as required, because the entirety of the evidence Cunningham presented the jury about the historic use of the disputed land established only that all prior owners of Kindt's property impliedly permitted their neighbors to use the parking strip, and there was no showing of an assertion of hostile right by Cunningham's predecessors.

The jury was presented with the following unrebutted evidence. In 1977, the year Susan built the concrete parking pad, her then-neighbor Voiland began parking on the western portion of the pad on Susan's property, and she continued to do so without complaint from Susan for two years. When Kearney moved in, they allowed Voiland to continue to park there. No one expressly discussed who owned the area Voiland was parking on or who owned what part of the pad. But the jury heard testimony that a "crack" or "seam" in the concrete which divided the plot roughly down the middle into east and west portions functioned as a point of demarcation, as evidenced by the neighbors' use of the area on either side of it, and this arrangement continued after Cunningham purchased the home from Voiland in 2011.

For example, the jury learned that when Kearney needed to install a retaining wall on the west side of the pad, they made sure the pallets of blocks that were delivered only occupied the area east of the seam, so Voiland could get in and out of her car without interference. The jury also saw pictures showing Kearney's car parked on the east side of the pad. And one of the Kearneys testified she always considered the west side of the pad to be Voiland's to use. The jury

also learned Kearney built a fenced garden above the retaining wall to the east of the seam, and maintained it and the rest of their property on that side. And the jury heard Voiland's son was sometimes tasked with clearing weeds west of the seam, but that area was generally kept more overgrown than the east side. After Cunningham moved in, witnesses testified that Kearney continued to use only the east portion of the area, and Cunningham installed a drain on the west side and also used it for storage.

In short, the jury heard evidence that Voiland "initially" used the disputed parking area without any hint of an assertion of title but only by Susan's "sufferance and acquiescence," which then Kearney continued for Voiland and Cunningham. *Miller*, 91 Wn. App. at 828 (quoting *Granston*, 52 Wn. App. at 294). At no time did the jury hear testimony or other evidence that Voiland possessed a portion of the pad in a manner that asserted a hostile right to Susan or Kearney's ownership, or that "any subsequent act terminated permission such that a hostile use arose" until 2020, when the present dispute between the couples arose. *Id.* at 829, 832. "[W]hen use is permissive at the outset, an adverse claim cannot lie unless the true owner has some notice that an adverse claim is being made." *Id.* at 830. There is no evidence that any such notice occurred here.

In response, Cunningham asserts that "substantial evidence demonstrates Joanne Voiland interfered with Ms. Kearney and Mr. Kreissl's use of the concrete parking pad for many decades." "Interference with use" does not establish that "claimant's use has been hostile to the title owner's, in that the claimant's use has been that of an owner." *Miller*, 91 Wn. App. at 828. And, in its recitation of the

facts on appeal, nowhere does Cunningham point to any such hostile act, let alone a revocation of, notice of, or change in use converting the "initial" permissive use to hostile use. *Id.* at 829, 832.

Therefore, Cunningham's counterclaim for quiet title by adverse possession fails as a matter of law. *Chaplin*, 100 Wn.2d at 861-62. In turn, the jury verdict on this theory must be set aside, as "clearly unsupported by substantial evidence." *Burnside*, 123 Wn.2d at 107-08.

2.  Boundary by Mutual Recognition and Acquiescence

Kindt next argues the evidence does not support that Cunningham acquired title to the disputed land under the doctrine of boundary by mutual recognition and acquiescence. We disagree.

Mutual recognition and acquiescence is "a doctrine of boundary adjustments that supplements adverse possession in the settlement of boundaries." *Lloyd v. Montecucco*, 83 Wn. App. 846, 855, 924 P.2d 927 (1996) (citing 17 WILLIAM B. STOEBUCK, WASH. PRAC. REAL ESTATE: PROPERTY LAW § 8.21, at 519 (1995)). To quiet title under a theory of boundary by acquiescence, the claimant must establish proof of: (1) a "certain, well-defined" line upon the ground that is "in some fashion physically delineated;" (2) for which, "in the absence of an express agreement," "the adjoining landowners *or their predecessors in interest* in good faith manifested by their acts, occupancy, and improvements with respect to their respective properties a mutual recognition and acceptance of the designated line as the true boundary line;" (3) for the length of "time required to secure property by adverse possession," i.e., 10 years. *Lamm v. McTighe*, 72 Wn.2d 587, 592-93,

434 P.2d 565 (1967) (emphasis added); *see also* RCW 4.16.020. Kindt does not challenge that such "acts, occupancy or improvements" may be committed by the landowners or their "predecessors in interest."

We hold that substantial evidence supports the jury's finding that, "for the requisite period of time," Kindt and Cunningham's predecessors in interest "actually demonstrated, by their possessory actions with regard to their properties and the asserted line of division between them, a genuine and mutual recognition and acquiescence in the given line as the mutually adopted boundary between their properties." *Lamm*, 72 Wn.2d at 593.

With respect to the first element, the jury heard testimony that, although prior owners did not expressly discuss the reach of their properties, they referred to a "crack" or "seam" in the concrete pad, which is aligned with and extends from an adjacent retaining wall, which roughly divided the pad down the middle into east and west portions, and which functioned as a point of demarcation. We conclude this seam is a sufficiently "certain well-defined" line "upon the ground" that is "*in some fashion* physically" delineated that may serve to designate the boundary under this doctrine. *Id.* at 593 (emphasis added); *cf. Montecucco*, 83 Wn. App. at 855 (finding the first element not satisfied because "[t]he designated tidelands boundary is not certain and well-defined by the Montecuccos' placement of errant concrete blocks, intermittent moorage, and seeding of oysters and clams").

As to the second element, the evidence showed previous owners—and the parties for the first two years of their relationship—used and occupied only their respective half of the pad. As aforementioned, the jury heard evidence the various

prior owners had not only consistently parked on their respective side of the seam, but had erected a fenced garden, weeded, installed an electric charging station, put in drainage pipes, and stored belongings only on their sides of the crack. These are "acts, occupancy, and improvements" on the property that provides substantial evidence that the parties in good faith, manifested "mutual recognition and acceptance of the designated line as the true boundary line." *Lamm*, 72 Wn.2d at 593.

As to the third element, Kindt conceded at oral argument, "you can certainly use any ten-year period" to make the required showing between, not only current owners, but their predecessors in interest. Wash. Ct. of Appeals oral argument, *Kindt v. Cunningham*, No. 87169-2-I (Mar. 5, 2025), at 6 min., 31 sec. through 6 min, 33 sec. *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025031162/?eventID=2025031162. Indeed, the jury heard evidence from the Kearneys, who testified about their actions during the period they lived in the Kindt's home, which was from 1979 to 2018. Thus, the jury heard evidence of a mutual recognition and acceptance of the line along with Cunningham and Voiland, which lasted for a duration beyond the requisite 10-year period.

In response, Kindt first argues that there is no evidence of express agreement between the parties. But the "existence of an express agreement between adjoining landowners resolving an uncertainty in or dispute about the location of the true boundary line . . . is not an indispensable element in the application of that doctrine." *Lamm*, 72 Wn.2d at 593.

10

Otherwise, Kindt offers conclusory arguments that there is no evidence the parties or their predecessors "manifested" an intent to alter the boundary line and no evidence Cunningham ever provided them a legal description of the claimed area. However, none of these facts are required to prove the doctrine, so Kindt's assertions are unavailing. *Id.* at 592-93. Indeed, our Supreme Court has held that it is a "truism that actions are often, if not always, stronger talismans of intentions and beliefs than words." *Id.* at 593.

In summary, we hold that substantial evidence supports the jury's verdict fixing the boundary line and quieting title in Cunningham's favor under the doctrine of boundary by acquiescence. As a result, even though we separately conclude their verdict based on a theory of adverse possession is unsupported, we affirm the court's judgment quieting title in Cunningham's favor because it can be sustained upon this ground. *See Stevens v. Stevens*, 10 Wn. App. 493, 497, 519 P.2d 269 (1974) (noting that although the trial court judgment effectively quieted title "based upon a theory which we deem[ed] inappropriate," we affirmed it because, we explained, "if it can be sustained upon any ground it will be upheld.").[3]

B.    Legal Description of the Disputed Property

Kindt next claims that the court erred in entering judgment in Cunningham's favor because it included a technical, legal description of the property never presented to the jury. In support, they argue that "[f]ailing to provide such a legal description to the jury is a fatal error" under the requirements of chapter 7.28 RCW.

---

[3] Because the verdict may be affirmed on boundary by acquiescence, we need not reach Cunningham's alternate theories of estoppel in pais and prescriptive easement.

11

We reject that contention.

Chapter 7.28 RCW addresses ejectment and quiet title actions. Three provisions are relevant here. RCW 7.28.120 and .130 set out, inter alia, pleading requirements for both plaintiff and defendant. In their complaint, a plaintiff must describe the property "with such certainty as to enable the possession thereof to be delivered if a recovery be had." RCW 7.28.120. In any counterclaim, a defendant must set forth "the nature and duration" of any claimed "estate, license or right" "with the certainty and particularity required in a complaint." RCW 7.28.130. Finally, under RCW 7.28.140, a plaintiff will prevail if the jury finds they are "entitled to the possession of the property described in the complaint" and determines "the nature and duration of his or her estate in such property[.]" The defendant will prevail if a jury finds "the plaintiff is not entitled to the possession of the property described in the complaint . . ." and determines "the estate in such property . . . or right to [its] possession . . . [is] established on the trial by the defendant, if any, in effect as the same is required to be pleaded." *Id.*

Here, Kindt's complaint identifies a "concrete pad between [their] Property and the [Cunningham's] property," inserts a color picture which it claims is a "general[] depiction" of the properties and the pad, and avers Cunningham has "recently claimed that a seam in the concrete pad marks the boundary between the properties." Cunningham's answer to Kindt's complaint identified the disputed area as "the property west of the concrete seam, approximately four feet east of the seam, and all property west of the fence."

Further, Kindt's own trial testimony and argument repeatedly described this

12

area as the property at issue. And there is ample admitted documentary evidence, including photographs and maps, showing the disputed area. Finally, the jury's special verdicts referred to the areas so described as "the disputed area between the retaining wall and the Defendant's home" and "the disputed area of the concrete pad."

There was never any doubt of the land in dispute. We hold that Cunningham satisfied the requirements of RCW 7.28.130 of identifying the disputed land with sufficient certainty and particularity, and that, after it determined Cunningham prevailed, the jury sufficiently identified the same land consistent with the description in the complaint and the counterclaim. Thus, the court did not err in entering judgment based on compliance with chapter 7.28 RCW.

Moreover, nowhere does chapter 7.28 RCW further require that a jury be presented with or consider a legal description of the property in order to satisfy that statute or for a court to enter judgment in a claimant's favor. This court must respect the legislature's chosen language and we "must not add words where the legislature has chosen not to include them." *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003).

In similar contexts, our Supreme Court has held that, if "a person of ordinary intelligence and understanding can successfully use the description in an attempt to locate and identify the particular property sought to be conveyed, the description answers its purpose and must be held sufficient." *Ontario Land Co. v. Yordy*, 44 Wn. 239, 243, 87 P. 257 (1906) (an action to recover possession of property); *Lawson v. Bankers Ins. Co.*, 562 P.3d 785 (2025) (applying the same standard to

the requirements for deeds or other instruments affecting title to real estate). Thus, even without a legal description, the description from Kindt's complaint, to Cunningham's counterclaim, to the jury's special verdicts is sufficient.

Thus, this assignment of error fails.[4]

C.      Alleged Implicit Appeals to Racial Bias

Kindt next argues they did not a receive a fair trial under *Henderson v. Thompson*, 200 Wn.2d 417, 518 P.3d 1011 (2022), because Cunningham made impermissible appeals to implicit racial bias against Burlingame, who is African American. We decline to reach this claim because we hold that Kindt affirmatively waived the issue.

We long have held that a party waives an issue when they explicitly disclaim it and thereby deprive the trial court the opportunity to address it. *See*, *e.g.*, *City of Auburn v. Hedlund*, 137 Wn. App. 494, 504 n.20, 155 P.3d 149 (2007).[5]

---

[4] We decline to address three other specific claims about the entry of judgment that Kindt lists in their issues relating to assignments of error. They assert the judgment was erroneous because it was: (1) entered 14.5 months after the trial, (2) signed by a judge who did not preside over the trial, and (3) relied on the declaration of a surveyor who did not testify before the jury. However, Kindt provides no argument on these claims in their opening brief. The only claim Kindt later addresses is the second—for the first time in their reply brief. Where a party "present[s] no argument on a claimed assignment of error, [that] assignment of error is waived," and an issue "argued for the first time in a reply brief is too late to warrant consideration." *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[5] This holding is based on and consistent with a well-recognized principle of judicial economy. Namely, our Supreme Court has held "an 'appellate court may refuse to review any claim of error which was not raised in the trial court,'" based on the policy "to 'encourage the efficient use of judicial resources.'" *State v. O'Hara*, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009) (citations omitted) (quoting RAP 2.5(a)). It further explained, "'appellate courts will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial.'" *Id.* at 98 (quoting *State v.*

Kindt did not make any objection during trial on the basis of any appeal to racial bias, did not move for a new trial on that basis, and did not raise the issue in response to Cunningham's motion for entry of judgment. Only in response to Cunningham's motion for fees ("Response") did Kindt first allege that the Cunninghams themselves "were influenced by and acted upon the systemic racial injustice suffered by people like [Kindt] whether they admit it or not." Notably, however, both in their brief and in a declaration in support of their Response, Kindt states that "there is no evidence of any impropriety by [Cunningham's counsel]. Neither [Kindt themselves] nor [Kindt's counsel] make any such suggestion." In her declaration, Kindt's counsel stated, "I have reviewed the pleadings and files in this case, including a transcript of trial, and *have not found evidence of any racial improprieties by [Cunningham's counsel]*." (Emphasis added.) Thus, Kindt does not substantively rely on *Henderson*, although it had been published and they were aware of it as they cite to it in their Response.

Now on appeal—although they do not actually assign error or include the claim in their related issues—Kindt argues they were deprived, expressly under *Henderson*, of a fair trial because Cunningham's counsel "elicited testimony" in a way that "color[ed]" Kindt as "combative, unreasonable, and litigious" in a "subtl[e] appeal[] to racial and tribal emotions." Specifically, Kindt claims Cunningham's counsel engaged in the "same" tactics as in *Henderson* as they "'primed' the jurors

*Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)); *see also Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983) ("Failure to raise an issue before the trial court generally precludes a party from raising it on appeal. . . . The reason for this rule is to afford the trial court an opportunity to correct any error, thereby avoiding unnecessary appeals and retrials.") (citations omitted) (citing inter alia RAP 2.5(a)).

15

with appeals to racial bias" through its characterization of Burlingame as "'an angry Black woman,'" unfavorably comparing the Black plaintiff (Burlingame) with the White defendants (Cunningham), and allusions that Burlingame was seeking simple financial gain. (quoting *Henderson*, 200 Wn.2d at 436, 422, & 400.)

Likewise, at oral argument, Kindt attributed alleged racial misconduct specifically to Cunningham's counsel, in stating that choosing to characterize their actions as "petty and stupid" was the "theme that got carried through the entire theory" at trial. Wash. Ct. of Appeals oral argument, *supra* at 20 min., 40 sec. through 20 min., 43 sec. Kindt argued, "to continually paint the only Black woman in the neighborhood as petty, stupid, angry, and filing complaints taint[ed] the whole thing." *Id.* at 21 min., 21 sec. through 21 min., 29 sec.

These are each different arguments than ever presented to the trial court. Not only were these assertions not before the trial court, but Kindt explicitly disclaimed them in a sworn declaration. Because the trial court was deprived the opportunity to address this issue and Kindt explicitly waived these claims, we do not reach the merits. *Hedlund*, 137 Wn. App. at 504 n.20.

In their reply brief, Kindt argued that issues of racial bias can be raised for the first time on appeal as manifest constitutional error. Setting aside whether this is procedurally proper,[6] Kindt conceded at oral argument that a RAP 2.5 analysis is required for us to consider whether the error is manifest. Wash. Ct. of Appeals oral argument, *supra* at 20 min., 07 sec. through 20 min., 18 sec.; *see State v.*

---

[6] *See Cowiche Canyon Conservancy*, 118 Wn.2d at 809 (an issue "argued for the first time in a reply brief is too late to warrant consideration.").

*Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). And when Kindt was reminded the appellant bears the burden of establishing manifest error and asked if their appeal included such an analysis, Kindt admitted, "I did not argue that in the brief, your honor." Wash. Ct. of Appeals oral argument, *supra* at 20 min., 54 sec. through 20 min., 56 sec.; *see State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). Thus, Kindt has not argued, let alone established, that they are entitled to RAP 2.5(a)'s exception to Kindt's affirmative waiver.

Thus, this assignment of error fails.

D.   Attorney Fees

1.  Trial Award

The trial court granted Cunningham attorney fees. Its entry of judgment had found, consistent with the jury verdicts, that Cunningham established ownership of the disputed property under their various theories and awarded fees "[p]ursuant to RCW 7.28.083(3) and *Workman* . . . [as] the prevailing party in this action asserting title to real property by Adverse Possession." (citing *Workman v. Klinkenberg*, 6 Wn. App. 2d 291, 430 P.3d 716 (2018)). Cunningham appears to argue we should uphold the award if we affirm the outcome quieting title in their favor under any of their theories. We disagree and reverse the trial court's fee award because, as explained above, substantial evidence does not support the verdict on adverse possession.

We apply a two-part standard of review to a trial court's award or denial of attorney fees. *Park Place Motors, Ltd. v. Elite Cornerstone Constr., LLC*, 18 Wn. App. 2d 748, 753, 493 P.3d 136 (2021). We review whether there is a legal basis

to award fees de novo, and we review the court's decision to award or deny fees and the reasonableness of the resulting award for an abuse of discretion. *Id.* Where "substantial evidence" in the record does not support a finding from which a trial court draws a conclusion of law, the court has abused its discretion. *In re Marriage of Fahey,* 164 Wn. App. 42, 55-56, 262 P.3d 128 (2011).

RCW 7.28.083(3) provides that "the prevailing party in an action asserting title to real property by *adverse possession* may request the court to award costs and reasonable attorneys' fees." (Emphasis added.) It continues, "[t]he court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just." *Id.* The statute makes no reference to claims seeking to quiet title under theories of boundary by acquiescence or estoppel in pais.

This court has consistently held that "a claim of mutual recognition and acquiescence is a separate claim from adverse possession," such that one may recover fees under the latter, but not otherwise. *Green v. Hooper*, 149 Wn. App. 627, 631, 205 P.3d 134 (2009); *Travis v. Wash. Horse Breeders Ass'n, Inc.*, 111 Wn.2d 396, 411, 759 P.2d 418 (1988) (remanding a fee award for which only some of the underlying claims permitted recovery because, "[w]hile a number of fundamental facts are essential to every aspect of the lawsuit, the law pertaining to [the various theories asserted] is not the same [and,] while there may be an interrelationship as to the basic facts, the legal theories which attach to the facts are different."); *see also SW Suburban Sewer Dist. v. Fish*, 17 Wn. App. 2d 833, 840-41, 488 P.3d 839 (2021) (holding that a party is entitled to fees under RCW

18

7.28.083(3) on a prescriptive easement claim only "when claims involving prescriptive easement also involve claims of adverse possession"); *McColl v. Anderson*, 6 Wn. App. 2d 88, 92, 429 P.3d 1113 (2018) (same as to claims involving other interests); *McCallum v. Smith*, No. 86175-1-I, slip op. at 18 (Wash. Ct. App. Apr. 22, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/861751.pdf.[7]

Here, as we explained above, we conclude Cunningham did not provide substantial evidence to support the sole claim they raised for which fees are authorized, namely, adverse possession. RCW 7.28.083(3). Therefore, we hold that attorney fees were awarded in error. *Park Place*, 18 Wn. App. 2d at 753; *Fahey*, 164 Wn. App. at 55-56. Even though there is substantial evidence to support the verdict on acquiescence, that claim is a separate theory—one we have not interpreted to provide a basis for attorney fees. *See Green*, 149 Wn. App. at 631; *Smith*, No. 86175-1-I, slip op. at 18.

---

[7] In *Smith*, this court specifically addressed the question whether RCW 7.28.083(3) permits fees for quieting title under a theory of boundary by acquiescence. No. 86175-1-I, slip op. at 18. McCallum had successfully brought claims of both acquiescence and adverse possession, and Smith argued the trial court erred in its fee award because it did not segregate fees for the acquiescence claim from the sum it awarded. *Id.* The trial court cited RCW 7.28.083(3) as the authority for the award and stated the theory of adverse possession was "inextricably linked" with McCallum's boundary by acquiescence theory, so it could not separate the time counsel had spent on each. *Id.* at 20. We affirmed the outcome in favor of McCallum on both theories, but we held the sum awarded was not just and equitable because we agreed with Smith that fees for boundary by acquiescence were not awardable under RCW 7.28.083(3). *Id.* We held RCW 7.28.083 does not permit fees for claims of mutual recognition and acquiescence, and we remanded the case to reduce the award on the basis of equity, even if the court could not separate the precise time spent on each claim. *Id.* Pursuant to GR 14.1, we discuss this opinion as necessary to a reasoned decision as illustrative of this court's approach to such questions.

In response, Cunningham relies on *Mayer v. City of Seattle*, 102 Wn. App. 66, 79-80, 10 P.3d 408 (2000), for the broad contention that we have "discretion to award attorney's fees for claims without independent authorization for recovery." But *Mayer* does not stand for this sweeping proposition. Instead, it mandates "segregation" of fees for those claims a party *is* authorized to recover fees on, from those claims for which it is not. It does not entitle a party who loses the only statutory basis for fees on appeal to retain an award based on distinct claims with no authorization for recovery. *See also Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 2 Wn.3d 36, 57 n.6, 534 P.3d 339 (2023) (holding that there is no authority to support the proposition that an award of attorney fees may be based solely on a losing claim.) And, here, there has been no showing that no reasonable segregation can be made between their claims that allow for fees, namely, adverse possession—and those that do not, namely, acquiescence. *See Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 673, 880 P.2d 988 (1994) (holding it is not enough to simply assert that various claims cannot be segregated because they are "related and to some extent rest on a common core of facts.").

2. Fees on Appeal

Both Kindt and Cunningham also seek attorney fees on appeal, and we decline to grant them to either party.

Attorney fees may be awarded only when authorized by a contract, a statute, or a recognized ground of equity. *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 839, 100 P.3d 791 (2004). In turn, RAP 18.1 allows this court to award fees and costs where they are statutorily allowed. *In re Marriage of Goodell*, 130 Wn.

20

App. 381, 394, 122 P.3d 929 (2005).

This court has held RCW 7.28.083(3) provides a basis to grant fees on appeal to a party who successfully *defends against* a claim to quiet title under adverse possession—who we deemed "the prevailing party on appeal." *See Workman*, 6 Wn. App. 2d at 308-09. Contrary to Cunningham's suggestion, we did not hold in *Workman* that a party is entitled to appellate fees simply for succeeding on any related claim "in an adverse possession action." Yet, because we hold substantial evidence does support Cunningham's boundary by acquiescence claim, we affirm the overall judgment quieting title in their favor. In other words, "both parties partially prevailed" here. Consequently, we exercise our discretion to decline to award attorney fees on appeal to either party. *See Acord v. Pettit*, 174 Wn. App. 95, 114, 302 P.3d 1265, (2013).[8]

## III.    CONCLUSION

We affirm that portion of the court's judgment quieting title in Cunningham's favor, reverse that portion awarding attorney fees to Cunningham, and decline to award either party fees on appeal.

Díaz, J.

WE CONCUR:

Chung, J.

---

[8] Kindt's briefing also contains an assignment of error alleging "[t]he jury instructions were erroneous." But we do not reach this claim because Kindt presents "no argument . . . on [this] claimed assignment" of error. *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

21